Day, J.
It is proper to remark, that this suit was not brought to recover for anything done under the contract; for everything of that character was satisfactorily adjusted between the parties. It is merely an action to recover damages for the breach of an executory contract, on the-part of the defendant, in discontinuing the construction of “ house connections ” of the sewers provided for in the contract.
It is claimed in behalf of the defendant that the action can not be sustained, for the reason that this part of the contract is of no validity. ' Undeniably this is true, unless, the defendant, being a municipal corporation, was authorized by the statute to make the part of the contract in question. It is claimed that the authority is found in the-act. of March 14, 1864 (S. & S. 847), and in the second section of the act of April 5, 1866. S. & S. 857.
The first-named act relates to the sewerage of cities of the first class, containing a population exceeding eighty thousand inhabitants, and makes it. the duty of the board of city improvements, whenever the city council deems it necessary to provide a system of sewerage for the city, or any of its parts, to devise “ a plan of sewerage and drainage” of the city, or such parts thereof, as may be designated by the council, which plan is to be formed with a view of dividing the city into districts, which are “ to consist of one- or more main or principal sewers, with the necessary branches and connections.” After the adoption of the-plan or plans by the board of city improvements, the board is to designate the districts required to be improved, and *507 have “ plans and specifications prepared,” for the construction of such sewers, showing, among other things, their “various branches and connections;” and, when this is done, the board is to give ten days’ notice in a newspaper of general circulation in the city, stating that “ such plans ” have been prepared and filed for the inspection of parties interested, who may be heard, and amendments to the plan may be made, and when corrected, the plan is to be filed in the office of the city engineer, “ whereupon the plan or plans for such district or districts, or part thereof, therein set forth and adopted, shall be considered the permanent, plan for the sewerage and drainage for such district or districts, or part thereof, so designated.” When all this is done, and not till then, the city council is empowered “to-provide, by ordinance, to require the board of city improvements to cause to be constructed such sewer or sewers specified in said plan, as shall be designated by said city council and specified in such plan;” and, to defray the expense thereof, the council is authorized to assess a charge on the lots, by or under which the sewers pass, not exceeding two dollars a front foot, and the excess of the expense is to be paid out of the general fund of the city.
It may well be doubted, whether power is conferred by this act to construct “ house connections,” as a part of the system of sewerage authorized by it; for it would practically cast the entire cost of such connections upon the general fund of the city, since the expense of the main sewers, it appears, exceeds the amount authorized to be assessed.on the property abutting the streets where they are constructed. It is against the evident scheme and policy of the act, to cast the burden of the construction of such connections, made for private benefit merely, upon the public, since the front-foot charge on the adjacent lots is to be equal in amount, though some lots may have house connections and others not; moreover, provision is made in the unrepealed portion of the act, to which that of March 14, 1864, is an amendment (S. & S. 849), for the *508 owners of property abutting on streets containing sewers, 'to tap and use them for draining their own premises, at their, own expense. This policy is further evinced, if not rendered conclusive, by subsequent acts expressly authorizing the city to construct “house connections,” and charge the expense exclusively upon the property benefited. S. & S. 858; Ib. 862.
But, however, that may be, if the act of March 14, 3864, does confer power to build house connections, it is clear that they must be a part of the “plan of sewerage” provided for by the act, and are only authorized upon the conditions applicable to the whole plan.
Now, these house connections were, not designated in, or indicated on, the plan approved by the board of city improvements; nor were the specifications, upon which the contract was made, filed as required until after the ordinance, directing the work to be done, was passed by the city council, nor were they submitted to the inspection of the parties interested before they were approved by the board. It is clear, therefore, that, if the act of 1864 conferred the power claimed, the conditions precedent to its exercise were not performed as required by the act. The contract in relation to house connections can not, therefore, be sustained by virtue of the act of March 14, 1864.
But it is claimed to be authorized by the second section of the act of April 5, 1866, before referred to. That section, I think, for reasons not necessary to be stated, stands by itself as much as it would if it were an independent act. It authorizes the construction of house connections from the street sewer to the outer line of the curbstone, the expense of which is to be assessed upon the lot or lots benefited thereby. But this authority can be exercised by the city council only upon the recommendation of the board of city improvements, and only in streets about to be paved or otherwise permanently improved. It is doubtful if either of these requisite antecedents of the power existed. There is, indeed, no pretense that the construction of these house connections had any relation to the improvement of the *509 streets, which is the very foundation of the power conferred by the section, and, for the same reason relates to such connections for gas or water, as well as to those of sewers. This position is strengthened in view of the act of January 26, 1867 (S. & S. 862), conferring like power with this section, but without limiting it to streets about to be improved; though it can not be exercised “otherwise” than-by ordinance,-which was attempted to be done in this case-under the second section of the act of April 5, 1866.
The other requisite to the power conferred by that section rests on a foundation too shadowy to be relied on as an affirmative ground of power; for it consists only of a-resolution submitted to the city council by the board of city improvements, passed March 1, 1867, by which it appears that the board only recommended a contract for work required by an ordinance, passed January 4, 1867, which was before the specifications for house connections were filed, and before, for aught that appears, such connections were contemplated for the district to which the contract related.: for the ordinance of September 26, 1866, only authorized house connections in streets that are, or were to be permanently improved, and no streets were designated otherwise in the ordinance; nor does it appear to have been passed upon the recommendation of the board of city improvements, without which it was of no legal effect.
This view of the case renders it unnecessary to refer more particularly to the rulings of the court below. The-part of the contract, on which the action was based, was - made without authority of law, and therefore was of no-validity. The plaintiff had no cause of action thereon; he was not then prejudiced by any ruling of the court. The.judgment must therefore be affirmed.